IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIAM R. DENVER § <br> (TDCJ No. 1939555), § <br>  § <br> Petitioner, § <br>  § <br> V. § <br>  § <br> LORIE DAVIS, Director § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br>  § <br> Respondent. § | No. 3:18-cv-81-K-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner William R. Denver, a Texas inmate, filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. The State filed a response opposing relief. *See* Dkt. No. 17. Denver did not file a reply brief. For the reasons explained below, the Court should deny Denver's federal habeas petition.

**Applicable Background**

After finding Denver guilty of three counts of aggravated sexual assault of a child, "the jury assessed punishment at fifty-five years' confinement and a $10,000 fine in each case." *Denver v. State*, No. 05-14-00817-CR, No. 05-14-00818-CR, No. 05-14-00819-CR, 2016 WL 661034, at *1 (Tex. App. – Dallas Feb. 18, 2016, pet. ref'd); *see*

1

*State v. Denver*, No. F-1400186-M, F-1262195-M, F-1262196-M (194th Jud. Dist. Ct., Dallas Cty., Tex.). The Dallas Court of Appeals corrected the judgment in Cause No. F-1400186-M, to reflect that Denver was convicted of aggravated sexual assault of a child under fourteen years of age. *See Denver*, 2016 WL 661034, at *8. The Texas Court of Criminal Appeals ("CCA") refused Denver's petition for discretionary review on August 24, 2016. *See Denver v. State*, Nos. PD-221-16, PD-222-16, & PD-223-16 (Tex. Crim. App. 2016).

Denver filed three state applications for writ of habeas corpus, claiming in each that his trial and appellate attorneys were constitutionally ineffective on numerous issues. *See* Dkt. 16-57 at 28-45; Dkt. No. 16-60 at 30-48; Dkt. No. 16-63 at 30-48 Additionally, Denver alleged the trial court abused its discretion by failing to sustain a motion for a mistrial, and by failing to comply with Article 36.27 of the Texas Code of Criminal Procedure. *See id.* On November 15, 2017, the CCA denied Denver's first two applications without written order. *See Ex parte Denver*, WR-87,561-01 (Tex. Crim. App. Nov. 15, 2017), and WR-87, 561-02 (Tex. Crim. App. Nov. 15, 2017); Dkt. Nos. 16-56, and 16-59. The CCA denied Denver's third application without written order on December 6, 2017. *See Ex parte Denver*, WR-87, 561-03 (Tex. Crim. App. Dec. 6, 2017); Dkt. No. 16-62.

In his timely-filed federal habeas application, Denver raises four of the grounds for relief he raised in his state applications. *See* Dkt. No. 3 at 6-7.

**Legal Standards and Analysis**

I.   Claims

Denver raises four claims of ineffective assistance of counsel. *See Id.*

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their

3

own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination

5

of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th

6

Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

### A. Ineffective Assistance

Denver makes four claims of ineffective assistance of counsel. Specifically, Denver argues counsel was ineffective by (1) failing to introduce evidence to establish an alibi, (2) failing to call the victim's younger brother as a witness, (3) failing to call character witnesses, and (4) putting the wrong case number on a subpoena. *See* Dkt.

No. 3 at 6-7.

The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at

689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus,

9

"the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's

10

application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Regarding Denver's first claim, he alleges his counsel was ineffective for "failing

11

to introduce evidence consisting of work receipts, fuel, and food receipts, and hospital records, all of which were for lengthy periods around the state's 'on or about' time frame." Dkt. No 3 at 6. Denver appears to argue that, because these receipts and records place him at locations away from the location of the crime, during dates near to the dates listed in his indictments, they would have established a credible alibi and that his counsel therefore was ineffective for failing to introduce the documents at trial.

Denver is incorrect. Denver's indictments allege that he committed the offenses "[o]n or about the 15th day of May A.D., 2012," and "[o]n or about the 17th day of May A.D., 2012. Dkt. No. 17-1 at 13-15. A review of the hospital records and work, fuel, and food receipts demonstrate, at best, the possibility that Denver was outside of Texas on a number of days near the actual dates listed in his indictments. *See* Dkt. Nos. 16-58 at 2-9, 16-61 at 3-10, & 16-64 at 3-10.

However, "the State [of Texas] may prove that an offense was committed before, on, or after the date alleged in the information, so long as the date is anterior to the presentment of the information and not barred by limitation." *Mireles v. State*, 901 S.W. 2d 458, 459 (Tex. Crim. App. 1995) (citation omitted). Because the State was not required to prove the offense occurred on the precise date listed in the indictments, the receipts and hospital records do not serve to create a credible alibi for Denver.

Accordingly, his counsel was not ineffective for failing to submit them as evidence at trial. *See United States v. Cronic*, 466 U.S. 648, 656 n. 19 (1984) ("If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade."). Denver has failed to

12

demonstrate that his counsel was ineffective regarding this claim. *See Strickland,* 466 U.S. at 687-88.

Next, Denver contends that his counsel was ineffective for failing to call the victim's younger brother. *See* Dkt. 3 at 6. He makes an unsupported argument that the victim's brother "emphatically stated that no such conduct occurred." *Id.* Denver additionally argues there was "conflicting testimony between the alleged victim and Denver's co-defendant that could have been resolved only through the testimony of [the victim's younger brother]." Dkt. No. 4 at 9.

Denver's conclusory statements are insufficient. Petitioners alleging ineffective assistance of counsel for failing to call a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Denver fails to demonstrate the younger brother was available and willing to testify. His claim, therefore, fails to demonstrate counsel provided ineffective assistance.

Denver next asserts that his counsel failed to call "character and mitigating witnesses." Dkt. No. 3 at 7. Specifically, Denver argues that his counsel failed to call witnesses Kathy Morris and Cleo Shulz. *See* Dkt. No 4 at 9. "Because deciding whether to call witnesses is a strategic trial decision, ... complaints of uncalled witness are 'disfavored' as a source of *Strickland* habeas review." *United States v. Harris*, 408 F.3d

13

189, 190 (5th Cir. 2005) (citing *Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir. 1990). And as explained above, petitioners must name the witness, demonstrate that the witness was available and would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to petitioner's defense. *See Day*, 566 F.3d at 538. With regard to Kathy Morris, neither Denver, in his habeas petition, nor Morris, in her affidavit, demonstrate that Morris was available and would have testified. Regarding Cleo Shulz, Denver simply states Shulz would have been able to present "evidence of not only his character and potentially mitigating facts, but of history between Denver and the alleged victim." Dkt. No. 3 at 7. The entirety of Shulz's affidavit states:

> It has come to my attention that William Russell Denver is incarcerated in Huntsville, Texas for a crime that I truly believe he has not committed. I have known Mr. Denver for Fourteen (14) years and he is not a man that would risk his life to do what he has been accused of. With respect to William Hernandez, as a little boy he has always appeared to be confused. At times William Hernandez would be happy, and the next he would be sad and crying. Mr. Hernandez was the oldest of four (4) children. Unfortunately, in my opinion, Mr. Denver's attorney did not properly represent him in this matter. Although I had Power of Attorney over Mr. Denver, his attorney, John Tatum never returned any of my phone calls. Mr. Tatum would continuously reschedule hearing dates. This went on for more than a year and a half (1 ½). It was only when the Judge in the case ordered him to bring the case to a close.
>
> I live in Jacksonville, Florida and was willing to come to Dallas, Texas to testify on Mr. Denver's behalf. However, I never got the opportunity to do so because Mr. Tatum never returned my telephone calls. I believe my testimony would have made a big difference in the outcome of this case. Attached is a letter that shows William Denver received hospital care on or about May 9, 2012.

Dkt. No. 3 at 31. While Denver has conceivably demonstrated that Shulz was available

14

and would have testified, he fails to set out the content of Shulz's proposed testimony or to show that the testimony would have been favorable to Denver's defense. Furthermore, Denver has failed to "affirmatively prove" that he was prejudiced by his counsel's failure to call Shulz as a witness. *Strickland*, 466 U.S. at 693. Denver has failed to meet the standard for demonstrating IAC on this claim.

Denver finally argues that his counsel was ineffective for "filing a subpoena using the wrong trial court case number, which resulted in exculpatory evidence being filed to the wrong defendant." Dkt. No. 3 at 7. Denver's habeas petition included a copy of a subpoena for "any and all medical records of William Russell Denver," *id.* at 26, which contained a cause number that is not associated with Denver's case. Denver claims that this "resulted in potentially exculpatory evidence being withheld from the jury." *Id.*

Denver does not demonstrate that any medical records existed or that, if they did, his counsel did not receive them. He provides no demonstration of what "exculpatory evidence" was actually lost. Denver merely makes a conclusory argument that his counsel was ineffective. This is insufficient. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (stating "[m]ere conclusory statements do not raise a constitutional issue in a habeas case.").

Additionally, Denver provides no support from the record to demonstrate that having an incorrect case number on the subpoena prejudiced him. Denver's statement that the error resulted in "potentially exculpatory evidence" being unavailable fails to affirmatively prove he was prejudiced by the error. *Strickland*, 466 U.S. at 693. Denver

15

has failed to demonstrate IAC under these circumstances. *See Id.* at 687-88.

Because the state habeas court's decision to deny relief did not involve an unreasonable application of *Strickland*, Denver's § 2254 petition should be denied. Denver fails to show that his counsel's performance was deficient.

Denver also fails to show that the state-court decision was unreasonable by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As such, Denver fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 19, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE